UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:10-CR-06-GFVT-HAI-5 |
| | ) | |
| RICKY D. KING, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove, the Court considers reported violations of supervised release conditions by Defendant Ricky D. King.  *See* D.E. 419 at 2.  Judge Van Tatenhove imposed judgment against Defendant on January 26, 2012, for one count of conspiracy to distribute 500 grams or more of cocaine.  *See* D.E. 271 at 1.  Judge Van Tatenhove sentenced Defendant to 72 months of imprisonment followed by five years of supervised release.  *Id.* at 2–3.  Defendant began his initial term of supervised release on March 6, 2015.  In August 2017, Defendant admitted to violating his conditions of release by using oxycodone.  At that time, Judge Van Tatenhove accepted the United States Probation Office's ("USPO") request that no action be taken.  D.E. 366.

Defendant's supervision was subsequently revoked in December 2016 for his failure to comply strictly with physicians' orders regarding medication.  *See* D.E. 391; D.E. 392.  For that revocation, Judge Van Tatenhove adopted the undersigned's recommendation and sentenced

Defendant to four months of imprisonment to be followed by four years of supervised release. D.E. 392 at 2–3.[1]

On March 10, 2017, Defendant began service on his four-year term of supervised release. In September 2017, his term of supervision was revoked for failing to notify the USPO within 72 hours of receiving a prescription and for seeking medical treatment/prescriptions outside of Kentucky. D.E. 414; D.E. 415. At that time, Judge Van Tatenhove adopted the undersigned's recommendation and sentenced Defendant to thirteen months of imprisonment with one year of supervised release to follow. D.E. 415 at 2–3. Defendant was released from the custody of the Bureau of Prisons on July 24, 2018, to begin service of his one-year term of supervised release.

On September 7, 2018, the USPO issued a Supervised Release Violation Report ("the Report") charging Defendant with two violations. Defendant's admitted conduct, as detailed in the Report, forms the basis for both violations. According to the Report, on September 6, 2018, Defendant told U.S. Probation Officer Derek Vonckx during a telephone call that he would be "dirty" if he were required to submit to a drug screen. Officer Vonckx contacted Defendant in the community on the same date, and Defendant admitted that he had used oxycodone on or about September 4, 2018.

Initially, Defendant told Officer Vonckx that the oxycodone used was remaining medication prescribed to him during his previous term of supervised release. Defendant provided a urine sample, which tested positive via instant testing device. Preliminary test results confirmed Defendant's admission and showed a positive reading for oxycodone. Defendant signed a Prob 4 Form (Positive Urinalysis Admission Report), in which he acknowledged his use of oxycodone on

---

[1] Judge Van Tatenhove's judgment also included a special condition requiring Defendant to participate in a ninety-day inpatient substance-abuse treatment program. D.E. 392 at 5. Defendant successfully completed that program in June 2017.

2

or about September 4, 2018. During a follow-up telephone conversation with Defendant, Officer Vonckx questioned Defendant regarding the circumstances of his use of oxycodone, specifically his statements regarding the use of an outdated oxycodone prescription. Defendant told Officer Vonckx he ingested oxycodone from his previous prescription on the morning of September 4, but he also admitted he ingested oxycodone that was not prescribed later in the evening on September 4.

Based on these actions, the Report alleges that Defendant violated two conditions of his supervised release. First, the Report alleges that, by signing the Prob 4 Form on September 6 acknowledging his use on September 4, Defendant violated the condition of his release that states: "You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the Court." This is a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

The Report alleges as a second violation that Defendant violated the condition of his release that he "not unlawfully possess a controlled substance" and the condition that he "not commit another federal, state or local crime." As a basis for this violation, the Report explains that oxycodone is a Schedule II Controlled Substance, pursuant to the Controlled Substances Act, and that, "[d]ue to the Sixth Circuit Court of Appeals' ruling that use is the equivalent of possession, and with the defendant's prior drug conviction, possession of oxycodone constitutes conduct that would result in a violation of 21 U.S.C. § 844(a), a Class E felony." This is a Grade B violation. *See* U.S.S.G. § 7B1.1(a)(2).

I.

On January 9, 2019, the Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure and set a final hearing following a knowing, voluntary, and

intelligent waiver of the right to a preliminary hearing. D.E. 433. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on January 16, 2019, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 435. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both violations as described in the Report. The United States thus established the violations under the standard of § 3583(e)(3). *See United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release.").

The parties did not agree as to the sentence. The United States argued for revocation of Defendant's supervision and for a term of twenty-four months of imprisonment with no supervised release to follow. Defense counsel, on the other hand, initially asked for a six-month term at a halfway house and for the Court to restart Defendant's one-year term of supervision. Following Officer Vonckx's assessment that a split sentence is not recommended by the Guidelines in this case based on Defendant's advisory range, *see* U.S.S.G. § 7B1.3(c)(2), defense counsel requested the lowest sentence possible for Defendant, either at the low end or below the Guidelines range. Defendant briefly addressed the Court and said he recognized there was no excuse for his actions.

II.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was convicted of the

Class B felony of conspiracy to distribute 500 grams or more of cocaine. *See* 21 U.S.C. §§ 846; 841(b)(1)(B); 18 U.S.C. § 3559(a)(2). Defendant's conviction carries a three-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3). Under 18 U.S.C. § 3583(h) and 21 U.S.C. § 841(b)(1)(B), there is no maximum term of supervised release that may be re-imposed.

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("[T]he policy statements found in Chapter Seven of the United States Sentencing Guidelines . . . 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct would qualify as Grade C violation with respect to the first violation and as a Grade B violation with respect to the second violation. The Guidelines instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b). Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and a Grade B violation, Defendant's Range under the Revocation Table of Chapter 7 is eighteen to twenty-four months. U.S.S.G. § 7B1.4(a).

### III.

The Court has evaluated the entire record, the Report and accompanying documents, the sentencing materials from the underlying judgment in this District, and the sentencing materials from the previous supervised release revocations. Importantly, the Court has considered all of the

§ 3553(a) factors imported into the § 3583(e) analysis.[2]  Based upon its consideration of those statutory factors, the Court recommends that Defendant's supervision be revoked and that he be sentenced to eighteen months of imprisonment with no term of supervision to follow.  *See* 18 U.S.C. §§ 3553(a), 3583(e).

Notably, Congress does ***mandate*** revocation in a case of this nature.  By statute, the Court must revoke Defendant's release because he possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).  The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1).  *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection.").  The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief.  *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)").  Nothing in the record supports application of the exception because not even inpatient drug treatment, which has been provided in the past, is an option at this point to meaningfully reduce the danger Defendant's actions pose to the public.

Additionally, concerning the nature and circumstances of the underlying offense, the Court observes that Defendant pled guilty to conspiring to distribute 500 grams or more of cocaine.  *See*

---

[2] Both counsel addressed the statutory factors in making their sentencing recommendations to the Court.

6

D.E. 271. As this Court has observed on both of Defendant's prior revocations, "Defendant was involved in a dangerous conspiracy to distribute cocaine," and his "continued improper use of prescription medication while on release increases the risk that he will return to dangerous criminal conduct." D.E. 410 at 6; D.E. 389 at 5.

Next, the Court considers Defendant's history and characteristics. At the final hearing, Defendant explained to the Court the limited opportunities he faced living in McCreary County and how many individuals in that county abuse opiates. The Court recognizes that much of that situational circumstance is unfair. However, Defendant must find the strength to overcome his addiction. If not, he faces the acute risk of returning to prison and the risk of physical injury or death.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes also inform the Court's analysis. In this case, every time Defendant uses oxycodone without a valid prescription or in violation of his physicians' orders, he commits additional criminal conduct. And, as discussed above concerning the nature of Defendant's underlying conviction, Defendant's continued use places him closer to returning to the criminal activity that resulted in his original conviction.

The Court must also consider whether a defendant needs any education, training, or treatment. At the final hearing, defense counsel discussed Defendant's need for mental-health treatment and drug-abuse treatment. She also described Defendant as having only received an eighth-grade education, so she asked that the Court consider Defendant's need to obtain his GED or to receive vocational training. The Court does recognize that Defendant could benefit from educational or vocational training, and it hopes that he will be able to find employment following his release from custody that is not as labor-intensive as the logging and timber industry in which

he has worked. However, concerning the request for additional drug-abuse treatment, there is no additional treatment the Court can provide in this case. Indeed, Defendant successfully completed the 500-hour Residential Drug Abuse Program while initially incarcerated, and he successfully completed the ninety-day inpatient substance-abuse treatment program as a condition of one of his prior revocations. The Court cannot offer Defendant better treatment than he has already received.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. In this case, the Court's recommended sentence is revocation of Defendant's supervised release with a term of imprisonment of eighteen months, which is at the low end of the Guidelines range. Here, the Court has considered the aggravating and mitigating factors of Defendant's case.

In seeking a high-end Guidelines sentence of twenty-four months, the United States described the aggravating factors in this case, including that Defendant has repeatedly been shown leniency, both as to his original conviction and as to his prior revocations, that he has repeatedly breached the Court's trust, and that his criminal history reveals drug and intoxicant offenses and violent offenses. The United States also submitted as an aggravating factor that the United States Marshals Service had a difficult time executing the arrest warrant for Defendant's current supervised release violations; however, Defendant said he did not run from the Marshals, rather, they were looking in the wrong spot for him.

On the other hand, the main mitigating factor in this case is Defendant's honesty with his probation officer that he had ingested oxycodone when he knew he should not have. Similarly, defense counsel described Defendant as earnestly wanting to do what he is supposed to do. Upon consideration of these factors, the Court believes its recommended sentence of revocation with

eighteen months of imprisonment is sufficient but not greater than necessary to address the incorporated § 3553(a) factors, and that the circumstances do not warrant a sentence below the Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation).

In fashioning its recommended sentence, the Court must also consider whether an additional term of supervised release is warranted. In this case, it is not. Indeed, Defendant's record demonstrates that he cannot be successful during a term of supervision.[3] Rather, the burden to overcome his addiction is on his shoulders. The Court hopes that Defendant can use the tools he learned while participating in and completing RDAP and the inpatient substance-abuse treatment when he is released from custody.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Throughout the course of this case, Defendant has continually and repeatedly breached the Court's trust. When he has been shown leniency, he has responded by violating the conditions of his release. Such breaches have consequences, as reflected by the previous revocations in this case and by the Court's current recommended sentence.

---

[3] For example, Defendant's presentence investigation report indicates that Defendant has a spotty history of compliance with a term of probation in a Tennessee state court matter and that he committed his underlying offense while on probation in a Kentucky criminal case.

9

IV.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of both violations;

2. That Defendant's release be revoked and that he be sentenced to a term of eighteen months of imprisonment; and

3. That no additional term of supervised release be imposed.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. *See* D.E. 435 at 1. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 23nd day of January, 2019.

Signed By:
*Hanly A. Ingram*
**United States Magistrate Judge**